ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| SISTEMA DE RETIRO DE LA UNIVERSIDAD DE PUERTO RICO POR CONDUCTO DE LA JUNTA DE RETIRO DE LA UNIVERSIDAD DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>LUIS A. FERRAO DELGADO, LUIS A. FERRAO DELGADO Y LA SOCIEDAD DE GANANCIALES COMPUESTA CON SU CÓNYUGE, JULIO MICHEO MARTÍNEZ Y OTROS<br><br>Peticionarios | **TA2026CE00567** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Caso núm.: SJ2024CV09505 (801)<br><br>Sobre: Daños y Perjuicios, Interferencia Torticera |

Panel integrado por su presidente el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

Bonilla Ortiz, Juez Ponente

**<u>SENTENCIA</u>**

En San Juan, Puerto Rico a 21 de mayo de 2026.

Comparece Omar Marrero Díaz (señor Marrero Díaz o parte peticionaria) mediante un recurso de *certiorari* para solicitarnos la revocación de la *Resolución Interlocutoria* emitida el 6 de abril de 2026, notificada al día siguiente, por el Tribunal de Primera Instancia Sala Superior de San Juan.[1] Mediante el referido dictamen, el foro de instancia denegó la *Solicitud de Desestimación de la Primera Demanda Enmendada*, presentada por la parte peticionaria el 6 de abril de 2026.

---

[1] *Demanda*, entrada núm. 329 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Por los fundamentos que expondremos, se *expide* el auto de *certiorari* y se *revoca* la *Resolución Interlocutoria* de la que se recurre.

I

El presente caso tuvo su génesis cuando, el 15 de octubre de 2024, el Sistema de Retiro de la Universidad de Puerto Rico por conducto de la Junta de Retiro de la UPR (Sistema de Retiro o parte recurrida) instó una *Demanda* sobre daños y perjuicios y daños punitivos contra la Universidad de Puerto Rico (UPR), la Junta de Gobierno de la Universidad de Puerto Rico (Junta de Gobierno), oficiales y funcionarios de la UPR y miembros de la Junta de Gobierno, en su carácter personal. Alegó que la UPR aprobó un presupuesto para el año fiscal 2023-2024 y que se asignaron unas partidas específicas para cubrir aportaciones patronales al Sistema de Retiro. Sostuvo que, durante dicho año fiscal, los codemandados omitieron el pago de aproximadamente $38,000,000.00 por concepto de los fondos que estaban destinados al Sistema de Retiro. Adujo que realizó esfuerzos para lograr el cumplimiento de las aportaciones patronales. No obstante, indicó que dichos reclamos fueron ignorados temerariamente por los demandados. Esbozó que, como consecuencia directa de la falta de aportaciones patronales y la desviación de fondos, se tuvieron que liquidar activos para cumplir con las obligaciones corrientes. Sostuvo que lo anterior causó una pérdida significativa de oportunidades de inversión. Asimismo, arguyó que la falta de pago impidió réditos reales para la continuidad y solvencia del Sistema de Retiro. Por tal razón, alegó que los codemandados debían responder, tanto en su carácter personal como oficial, por los daños

causados. A esos efectos, solicitó resarcimiento por concepto de los daños y perjuicios que se calculan en $10,000,000.00, y la imposición de daños punitivos en una cantidad no menor de $1,000,000.00.

Luego de varios trámites procesales innecesarios pormenorizar, la Junta de Retiro, en nombre del Sistema de Retiro, solicitó autorización para enmendar la *Demanda* mediante una *Solicitud de Autorización para Enmendar la Demanda*.[2] En esta, adujo que las enmiendas tenían el fin de incluir el año fiscal 2024-2025, toda vez que los demandados incurrieron en la misma práctica durante dicho año fiscal. Además, se incluyeron los miembros de la Junta de Gobierno que fungieron como tales en dicho periodo. Por otro lado, indicó que las enmiendas tenían el propósito de precisar el monto adeudado en concepto de aportación patronal, conforme a los presupuestos certificados para el año fiscal 2023-2024. Asimismo, incorporó la reclamación de los daños ocasionados por los codemandados como resultado de su incumplimiento con las aportaciones patronales recomendadas por los actuarios del Sistema de Retiro. En respuesta, el 15 de octubre de 2024, el foro de instancia emitió y notificó *Orden* mediante la cual concedió la autorización.[3]

Así las cosas, el 3 de octubre de 2025, la Junta de Retiro presentó de manera independiente la *Primera Demanda Enmendada*.[4] En esta, se incluyó como codemandado al señor Marrero Díaz, en su carácter personal e individual, por razón de ser una de las personas que,

---

[2] *Solicitud de Autorización para Enmendar la Demanda*, entrada núm. 168 en SUMAC.
[3] *Orden*, entrada núm. 180 en SUMAC.
[4] *Primera Demanda Enmendada*, entrada núm. 181 en SUMAC.

durante los años fiscales 2023-2024 y 2024-2025, participaron en las decisiones que resultaron en el incumplimiento de las obligaciones hacia el Sistema de Retiro y que ocasionaron los daños y perjuicios que se reclaman. Ante ello, varios demandados instaron por separado sus respectivas mociones desestimatorias.

El 6 de abril de 2026, el señor Marrero Díaz presentó una *Solicitud de Desestimación de la Primera Demanda Enmendada*.[5] Alegó que la *Primera Demanda Enmendada* no incorporó alegaciones fácticas nuevas, específicas ni individualizadas dirigidas en su contra. Más bien, adujo que el Sistema de Retiro se limitó a extenderle, de manera automática e indiscriminada, las mismas imputaciones genéricas formuladas contra el conjunto de los codemandados. Indicó que, durante los periodos objeto de las alegaciones, figuraba como Director Ejecutivo de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (AAFAF). Esbozó que no compareció personalmente a los procesos deliberativos pertinentes, toda vez que en el ejercicio de sus funciones y conforme a las facultades que le confiere su cargo, designó representantes para que comparecieran y participaran en nombre de la AAFAF como miembro de la Junta de Gobierno de la UPR. Por otra parte, sostuvo que las alegaciones de la *Primera Demanda Enmendada* no derrotaron la inmunidad condicionada ni la protección estatutaria del Artículo 11 de la Ley Núm. 2 de 18 de enero de 2017, *Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico*, 3 LPRA sec. 9371, (Ley Núm. 2-2017). Por otro lado, adujo que dichas

---

[5] *Solicitud de Desestimación de la Primera Demanda Enmendada*, entrada núm. 327 en SUMAC.

alegaciones tampoco exponían una reclamación por interferencia torticera que justificara la concesión de un remedio. Por último, arguyó que las imputaciones de desviación de fondos eran conclusorias, especulativas y jurídicamente insuficientes. A tenor, solicitó que se declarara Ha Lugar la desestimación de la *Primera Demanda Enmendada* y, consecuentemente, se desestimara la misma.

En respuesta, el 6 de abril de 2026, notificada al día siguiente, el foro de instancia emitió la *Resolución Interlocutoria* de la que se recurre.[6] Mediante esta, el foro *a quo* declaró No Ha Lugar la *Solicitud de Desestimación de la Primera Demanda Enmendada* presentada por la parte peticionaria.

Inconforme, el 7 de mayo de 2026, compareció la parte peticionaria mediante un recurso de *certiorari* en el cual esgrimió la comisión de los siguientes dos (2) señalamientos de error:

> Primer Señalamiento de Error: Erró el Tribunal de Primera Instancia al no aplicar la doctrina de inmunidad condicionada ni la exoneración estatutaria expresa establecida en el Artículo 11 de la Ley Núm. 2-2017, a pesar de que de la faz de la Demanda Enmendada surge que las actuaciones imputadas al Sr. Marrero fueron realizadas en el descargo de sus funciones oficiales como Director Ejecutivo de la AAFAF.

> Segundo Señalamiento de Error: Erró el Tribunal de Primera Instancia al concluir que la Demanda Enmendada contiene alegaciones de hechos suficientes para subsistir la Solicitud de Desestimación del Sr. Marrero, aun cuando las alegaciones formuladas en su contra son generalizadas, conclusorias y carentes de hechos específicos e individualizados que permitan inferir conducta dolosa, maliciosa o constitutiva de negligencia crasa suficiente para sostener la imposición de responsabilidad personal en su contra, incumpliendo así con el estándar de plausibilidad y suficiencia alegatoria exigido por la Regla 10.2 de Procedimiento Civil.

---

[6] *Resolución Interlocutoria*, entrada núm. 329 en SUMAC.

Recibido el recurso, mediante *Resolución* emitida el 8 de mayo de 2026, concedimos a la parte recurrida quince (15) días, contados a partir de la fecha de presentación del recurso de epígrafe, para oponerse y expresarse sobre los méritos del recurso. El 15 de mayo de 2026, compareció la parte recurrida mediante *Oposición a Expedicion de Certiorari*. Habiendo quedado perfeccionado el recurso ante nos, procederemos a disponer del mismo.

**II**

**A**

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil. 32 LPRA Ap. V, R. 52.1. Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> […]. *Íd.*

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.
>
> […]. *Íd.*

Establecido lo anterior, precisa señalar que el recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Rivera Figueroa v. Joes's European Shop*, 183 DPR 580, 596 (2011). A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional. *Rivera Figueroa v. Joes's European Shop*, 183 DPR 580, 596 (2011). La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". *SLG Zapata-Rivera v. J.F. Montalvo, supra*, 435. Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __

(2025) esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *Certiorari:*

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994). Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

De otra parte, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008).

Por último, en lo pertinente a este caso, precisa reseñar que cuando esta Curia se enfrenta a un auto discrecional sobre el cual no hay jurisdicción, la Regla 83 del Reglamento del Tribunal de Apelaciones, confiere facultad tanto para desestimarlo como para denegarlo. *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 109-110.

**B**

Nuestro ordenamiento jurídico promueve el interés de que todo litigante tenga su día en corte. Esta postura responde al principio fundamental y política judicial de que los casos se ventilen en sus méritos y se resuelvan de forma justa, rápida y económica. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1; *Banco Popular v. S.LG. Negrón*, 164 DPR 855, 874 (2005); *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 DPR 115, 124 (1992); *Amaro González v. First Fed. Savs.*, 132 DPR 1042, 1052 (1993). No obstante, nuestro ordenamiento permite la presentación de mociones dispositivas con el propósito de que todos o algunos de los asuntos en controversia sean resueltos sin necesidad de un juicio en su fondo. Los tribunales tienen el poder discrecional, bajo las Reglas de Procedimiento Civil, de desestimar una demanda o eliminar las alegaciones de una

parte, sin embargo, ese proceder se debe ejercer juiciosa y apropiadamente. *Maldonado v. Srio. de Rec. Naturales,* 113 DPR 494, 498 (1982). Es decir, la desestimación de un pleito constituye el último recurso al cual se debe acudir. *S.L.G. Sierra v. Rodríguez,* 163 DPR 738 (2005).

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, es aquella que formula la parte demandada antes de presentar su alegación responsiva, mediante la cual solicita que se desestime la demanda presentada en su contra. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Colón v. Lotería*, 167 DPR 625, 649 (2006). Dicho petitorio deberá basarse en uno de los siguientes fundamentos: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; y (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2; *Díaz Vázquez y otros v. Colón Peña y otros*, 2024 TSPR 113, resuelto el 25 de octubre de 2024; *Inmobiliaria Baleares, LLC y otros v. Benabe González y otros*, 2024 TSPR 112, resuelto el 21 de octubre de 2024; *Rivera Candela y otra v. Universal Insurance Company*, 2024 TSPR 99, resuelto el 11 de septiembre de 2024; *Blassino Alvarado y otro v. Reyes Blassino y otro*, 2024 TSPR 93, resuelto el 20 de agosto de 2024; *Costas Elena y otros v. Magic Sport y otros*, 213 DPR 523 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384 (2022); *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1065-1066 (2020).

Al resolver una moción de desestimación bajo el inciso 5 de la Regla 10.2 de Procedimiento Civil, *supra*, el tribunal tomará como ciertos todos los hechos bien alegados en la demanda, que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, 2025 TSPR 1, resuelto el 7 de enero de 2025; *Díaz Vázquez y otros v. Colón Peña y otros*, supra; *Inmobiliaria Baleares, LLC y otros v. Benabe González y otros*, supra; *Rivera Candela y otra v. Universal Insurance Company*, supra; *Blassino Alvarado y otro v. Reyes Blassino y otro*, supra; *Costas Elena y otros v. Magic Sport y otros*, supra; *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70 (2023); *Casillas Carrasquillo v. ELA*, 209 DPR 240 (2022); *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 267 (2021). Asimismo, tales alegaciones hay que interpretarlas conjuntamente, liberalmente, y de la manera más favorable posible para la parte demandante. *Íd.; Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, supra, págs. 428-429; *Dorante v. Wrangler of P.R.*, 145 DPR 408, 414 (1998). En vista de ello, la desestimación procedería únicamente cuando de los hechos alegados no podía concederse remedio alguno a favor de la parte demandante. *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013), citando a R. Hernández Colón, *Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231.

Tampoco procede la desestimación si la demanda es susceptible de ser enmendada. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, supra, pág. 429. En otras palabras, se debe considerar, "si a la luz de la situación más

favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". *Díaz Vázquez y otros v. Colón Peña y otros*, supra; *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497 (1994); *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991). Ahora bien, si tras este análisis el tribunal aún entiende que no se cumple con el estándar de plausibilidad, entonces debe desestimar la demanda, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba. *Costas Elena y otros v. Magic Sport y otros*, supra.

**C**

La Ley Núm. 2 de 18 de enero de 2017, Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, 3 LPRA sec. 9361 *et seq.*, dispone lo siguiente en su Artículo 11:

> A menos que se demuestre que ha incurrido en negligencia crasa que conlleve una indiferencia temeraria hacia sus deberes, ninguna persona tendrá responsabilidad civil, criminal o de otro tipo hacia entidad o persona alguna y, sin necesidad de notificación u orden adicional, serán exonerados de acciones u omisiones en su capacidad y dentro de su autoridad en conexión con, en relación con, que surjan bajo, o según permitido por esta Ley. Los miembros de la Junta, oficiales y empleados de la Autoridad [de Asesoría Financiera y Agencia Fiscal de Puerto Rico][7] serán defendidos e indemnizados por la Autoridad y exonerados de toda responsabilidad civil por acciones u omisiones de buena fe, en su capacidad y dentro de su autoridad. 3 LPRA sec. 9371.

---

[7] Véase, el inciso (a) del Artículo 3, Definiciones, de la Ley Núm. 2-2017.

Tal como surge de la letra, la inmunidad aquí concedida cobija a los funcionarios públicos de la Autoridad en su capacidad personal, por las acciones u omisiones, condicionado a que no hayan incurrido en negligencia crasa o indiferencia temeraria hacia sus deberes. En concordancia con el Artículo 16 del estatuto, el cual versa sobre las juntas, comités, comisiones y consejos, se establece que el Director Ejecutivo de la Autoridad, o su representante, "será miembro de toda Junta, Comité, Comisión o Consejo de los entes del Gobierno de Puerto Rico que sean considerados "covered territorial instrumentalities" bajo la Ley Federal PROMESA. 3 LPRA sec. 9376.

### III

Ante la consideración de este Tribunal revisor tenemos un recurso de *certiorari*, por lo que tenemos la obligación, como cuestión de umbral, el determinar si procede su expedición. En el presente caso, la parte peticionaria esbozó que erró el Tribunal de Primera Instancia al no aplicar la doctrina de inmunidad condicionada ni la exoneración estatutaria expresa establecida en el Artículo 11 de la Ley Núm. 2-2017, a pesar de que de la faz de la *Primera Demanda Enmendada* surge que las actuaciones imputadas al señor Marrero Díaz fueron realizadas en el descargo de sus funciones oficiales como Director Ejecutivo de la AAFAF. Además, expuso que el foro de instancia incidió al concluir que la *Primera Demanda Enmendada* contiene alegaciones de hechos suficientes para subsistir la solicitud de desestimación del señor Marrero Díaz. Adujo que las alegaciones formuladas en su contra son generalizadas,

conclusorias y carentes de hechos específicos e individualizados que permitan inferir conducta dolosa, maliciosa o constitutiva de negligencia crasa suficiente para sostener la imposición de responsabilidad personal en su contra, incumpliendo así con el estándar de plausibilidad y suficiencia alegatoria exigido por la Regla 10.2 de Procedimiento Civil, *supra*.

Como es sabido, un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. *Coop. Seguros Múltiples de P.R. v. Lugo*, supra. Puntualizamos, que el *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Rivera Figueroa v. Joes's European Shop*, supra. A esos efectos, la naturaleza discrecional del recurso de *certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Además, esta Regla no opera en el vacío, tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones, así como en lo dispuesto por la Regla 52.1 de Procedimiento Civil. *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 59-60; 32 LPRA Ap. V, R. 52.1.

Con lo anterior en mente, nos dimos a la tarea de examinar minuciosamente los autos ante nuestra consideración. Luego de efectuar el referido examen, determinamos que el foro de instancia incidió al denegar

la moción de desestimación presentada por la parte peticionaria. En consecuencia, es claro que el asunto ante nuestra consideración amerita que nos apartemos de la normativa que confiere discreción a las actuaciones del Tribunal de Primera Instancia e intervengamos en este caso. Por tanto, nos resulta forzoso expedir el presente recurso de *certiorari*.

Según relatamos previamente, el caso de marras inició cuando la parte recurrida presentó una *Demanda* sobre daños y perjuicios y daños punitivos contra la UPR, Junta de Gobierno, oficiales y funcionarios de la UPR y miembros de la Junta de Gobierno, en su carácter personal. Pasado un tiempo, la parte recurrida enmendó su *Demanda* para, entre otras cosas, incluir al señor Marrero Díaz y otros como partes demandadas.

Luego de varias instancias procesales, la parte peticionaria presentó una moción de desestimación. En esta, indicó que la *Primera Demanda Enmendada* no incorporó alegaciones fácticas nuevas, específicas ni individualizadas dirigidas en su contra. Además, indicó que, durante los periodos objeto de las alegaciones, figuraba como Director Ejecutivo de la AAFAF y que, en el ejercicio de dichas funciones y conforme a las facultades que le confiere su cargo, designó representantes para que comparecieran y participaran en nombre de la AAFAF como miembro de la Junta de la UPR. Posteriormente, el foro de instancia emitió la *Resolución Interlocutoria* que nos ocupa. Mediante este dictamen, el foro primario denegó la desestimación de la acción del título.

Conforme expusimos en nuestra exposición doctrinal previa, la Ley Núm. 2-2017 en su Artículo 11 concede una inmunidad que cobija a los funcionarios públicos de la Autoridad en su capacidad personal, por las acciones u omisiones, condicionado a que no hayan incurrido en negligencia crasa o indiferencia temeraria hacia sus deberes. 3 LPRA sec. 9371.

Nótese que aun tomando como ciertos y de la manera más favorable las alegaciones de la parte recurrida en la *Primera Demanda Enmendada*, en ausencia de hechos individuales y específicos tendentes a demostrar que el señor Marrero Díaz ha incurrido en negligencia crasa, indiferencia temeraria hacia sus deberes, o intención de actos ilegales dentro del marco de su cargo y autoridad legal, este estaría cobijado por la inmunidad provista estatutariamente, al palio de la Ley Núm. 2-2017. Es decir, la parte recurrida no puede descansar sus imputaciones de responsabilidad personal únicamente por el hecho de que la parte peticionaria forma parte de la Junta de Gobierno de la UPR o de AAFAF. Dicho análisis excede la liberalidad de las alegaciones de nuestro ordenamiento procesal civil y daría al traste con el propósito legislativo de conferir inmunidad a los funcionarios públicos que de buena fe ejercen sus oficios en los cuerpos directivos, según estatuidos en la Ley Núm. 2-2017. La *Primera Demanda Enmendada* no contiene alegaciones y hechos específicos que ayuden a derrotar la aplicación de la inmunidad estatutaria reclamada por la parte peticionaria. Por lo tanto, es forzoso la desestimación de las causas de acción imputadas a la parte peticionaria, en su carácter personal, al amparo de la inmunidad estatutaria.

Como es sabido, dado a que en nuestro ordenamiento jurídico se ha desarrollado una política pública a favor de que los casos se ventilen en sus méritos, los tribunales únicamente deben desestimar un caso cuando surja, sin lugar a duda, que el reclamante no tiene derecho a obtener ningún remedio. No obstante, puesto a que al señor Marrero Díaz le cobija la inmunidad establecida en el Artículo 11 de la Ley Núm. 2-2017, es forzoso concluir que el foro de instancia debió desestimar la causa de acción en contra de este. Por todo lo antes expuesto, concluimos que el primer error esgrimido por la parte peticionaria se cometió, por lo que procede la revocación de la *Resolución Interlocutoria* aquí recurrida.

## IV

Por los fundamentos que anteceden, se *expide* el auto de *certiorari* y se *revoca* la *Resolución Interlocutoria* recurrida. En consecuencia, se desestima la causa de acción contra la parte peticionaria.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones